**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
Wheeling

**KERON NEVEL,**

        Petitioner,

v.                                **CIVIL ACTION NO. 5:23-CV-285**
                                            Judge Bailey

**R. BROWN,** Warden, FCI Gilmer,

        Respondents.

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On August 28, 2023, the *pro se* petitioner, Keron Nevel, ("petitioner"), filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. 1]. On September 7, 2023, petitioner paid the $5 filing fee. [Doc. 9]. Petitioner is a federal inmate who is housed at FCI Gilmer in Glenville, West Virginia, and is challenging the Bureau of Prison's application of time credits under the First Step Act. On September 20, 2023, the respondent filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. [Doc. 12]. On October 4, 2023, petitioner filed a response to the petition, and on October 16, 2023, respondent filed a reply. [Docs. 17 & 18]. This matter is pending before the undersigned for an initial review and Report and Recommendation pursuant to LR PL P 2 and 28 U.S.C. § 1915A. For the reasons set forth below, the undersigned recommends that the Motion to Dismiss, or in the Alternative, for Summary Judgment be granted and the petition be denied and dismissed.

## II. BACKGROUND[1]

### A.  Conviction and Sentence

On March 14, 2016, petitioner was charged via criminal complaint in the Northern District of Ohio with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  On March 23, 2016, petitioner was charged via indictment with: Count One, being in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); Count Two, possession with intent to distribute oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); Count Three, possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and Count Four, possession with intent to distribute Tramadol in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(E).  On September 12, 2023, petitioner entered a guilty plea, pursuant to a plea agreement, to Count One of the indictment.  On January 10, 2017, petitioner was sentenced to 120 months imprisonment; the remaining counts were dismissed on a motion of the United States.  Petitioner did not appeal his conviction and sentence.

According to the Bureau of Prison's ("BOP") website, petitioner's projected release date, via good conduct time, is September 3, 2024.

### B.  The Instant Petition for Habeas Corpus Under § 2241

In his petition, petitioner alleges that the BOP is denying him earned credits which he is owed under the First Step Act.  Petitioner states that despite being eligible under

---

[1] The information in this section is taken from the petitioner's criminal docket available on PACER.  See **USA v. Nevel**, 1:16-CR-00090-CAB-1 (N.D. Oh. 2016) . **Philips v. Pitt Cnty. Mem. Hosp.**, 572 F. 3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of public record); **Colonial Penn. Ins. Co. v. Coil**, 887 F.2d 1236, 21239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

the First Step Act, the BOP has a policy "to hold petitioners good credit time days for First Step Act programs he participated in because he has not reached the 'Low' Recidivism Score." [Doc. 1 at 7]. He contends that nothing in 18 U.S.C. § 3632 allows the BOP to withhold his credits due to his recidivism score. [Id. at 8]. Petitioner contends that his release date should be September 3, 2024, and that he is entitled to 365 days of additional good time credits. [Id.]. For relief, he asks the Court to award him 365 days for First Step Act participation. [Id. at 12].

**C.    Respondent's Motion to Dismiss, or in the Alternative, for Summary Judgment.**

On September 20, 2023, respondent filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. [Doc. 12]. In the memorandum in support of the Motion, respondent argues that, first, the case should be dismissed because petitioner failed to exhaust administrative remedies. Respondent argues that the remedy process was made available to petitioner because he had previously filed administrative remedies relating to a disciplinary hearing, but that he had not pursued remedies related to the First Step Act. [Doc. 13 at 4–5]. Second, respondent argues that petitioner is not eligible to apply First Step Act time credits at this time. The BOP assigns a recidivism score based on an established PATTERN risk assessment tool. [Id. at 6]. Although prisoners with any score may earn credits, only inmates with a low or minimum score are able to have those credits applied. [Id. at 7]. Petitioner currently has a "high-risk recidivism level" and is thus unable to apply credits at this time. [Id.]. Third, respondent argues that the PATTERN system should be entitled to substantial deference. [Id. at 8–10]. Finally, respondent argues that decisions under 18 U.S.C. § 3624, including eligibility to apply First Step Act time credits, are not reviewable by the Court. [Id. at 10–15].

3

In his response, petitioner argues that the First Step Act contains ambiguous parts which contradict one another and that this Court must resolve that ambiguity. [Doc. 17 at 1]. Responding to the argument that he failed to exhaust administrative remedies, petitioner alleges he attempted to exhaust but was told he "cannot grieve policy." [Id.]. Further, petitioner argues that less deference should be given to the BOP's PATTERN system because he has maintained clear conduct for seven years and his PATTERN Score was not reduced. [Id. at 6].

### III.   LEGAL STANDARDS

**A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction. A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment. ***Adams v. Bain***, 697 F.2d 1213, 1219 (4th Cir. 1982); ***Mims v. Kemp***, 516 F.2d 21 (4th Cir. 1975). Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction. No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. See ***Materson v. Stokes***, 166 F.R.D. 368, 371 (E.D. Va. 1996). Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. See Fed. R. Civ. P. 12(h)(3).

**B.    Motion to Dismiss for Failure to State a Claim**

A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is plausible on its face.' **Bell Atl. Corp. v. Twombly**, 550 U.S. 554, 570 (2007) (emphasis added)." **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiffs, and must view the allegations in a light most favorable to the plaintiffs. **Edwards v. City of Goldsboro**, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. **Anheuser-Busch, Inc. v. Schmoke**, 63 F.3d 1305, 1312 (4th Cir. 1995).  In **Twombly**, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Id. at 555, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." *Id*. at 570.

This Court is well aware that "[m]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion." **Williams v. Branker**, 462 F. App'x 348, 352 (4th Cir. 2012).  "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." **Witthohn v. Fed. Ins. Co.**, 164 F. App'x 395, 396 (4th Cir. 2006).  However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint. *Id*. at 396–97.

5

**C.     Motion for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." **Anderson**, 477 U.S. at 250.

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." **Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); **Celotex Corp.**, 477 U.S. at 323–25; **Anderson**, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." **Anderson**, 477 U.S. at 249 (citations omitted).

Finally, this Court notes that *pro se* allegations are held to a less stringent standard than those drafted by lawyers and must be liberally construed. **Haines v. Kerner**, 404 U.S. 519, 520 (1972); **Hudspeth v. Figgins**, 584 F.2d 1345, 1347 (4th Cir. 1978).

## IV. ANALYSIS

### A. Respondent has failed to demonstrate that petitioner failed to exhaust available administrative remedies.

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing an action under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). "Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions. Failure to exhaust may only be excused upon a showing of cause and prejudice." *McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004) (citing *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 634-35 (2d Cir.2001), *Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir.1981)). Exhaustion as provided in § 1997e(a) is mandatory, regardless of the relief offered through administrative procedures. *Booth v. Churner*, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted prior to filing a complaint in federal court. *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (citing *Booth*, 532 U.S. at 741). "Those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524.

Pursuant to *McClung*, failure to exhaust may only be excused upon a showing of cause and prejudice. As recognized in *Carmona*, *supra*, which was cited by the Fourth Circuit in its opinion in *McClung*:

> [T]he interests of judicial economy and accuracy are served by requiring that, absent a showing of cause and prejudice, appeals proceed in the first instance through the federal agency review process. Following the administrative procedures could potentially obviate the need for judicial review, or at a minimum, develop the factual record at the agency level at a time when the disputed events are still relatively fresh in witnesses' minds. In this sense, it is the analogue of the exhaustion of state remedies requirement for a state prisoner seeking federal habeas review, and the results governing failure to take this path should be the same.

7

>  Administrative autonomy is also served by requiring that a federal prisoner justify his failure to exhaust his intra-Bureau remedies. When, however, legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies, the standard we adopt excuses this failure to exhaust.

*Carmona*, 243 F.3d at 634 (internal citations omitted).

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). *See* 28 C.F.R. § 542.10, *et seq*. If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R.§ 542.10-542.15; **Gibbs v. Bureau of Prison Office, FCI**, 986 F.Supp. 941, 943 (D.Md. 1997).

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." **Moore v. Bennette**, 517 F.3d 717, 725 (4th Cir. 2008). An administrative remedy is not available if prison administrators thwart an inmate from taking advantage of a grievance process. *See* **Ross v. Blake**, 578 U.S. 632, 644 (2016). Here, the petition alleges that petitioner's case manager told him that "the policy cannot be 'grieved' and all verbal and written informal requests have been denied." [Doc. 1 at 11]. In his response to respondent's Motion, he further states that although he attempted to pursue administrative remedies, his case managers refused to allow him to proceed due to being unable to grieve policy.

8

[Doc. 17 at 1]. Respondent's Motion and Reply to petitioner's Response fail to address these allegations, and the undersigned finds that respondent has failed to meet the burden of showing that petitioner failed to exhaust available administrative remedies.

**B.     Although petitioner is eligible to earn time credits, he is ineligible to have those credits applied toward prerelease custody or supervised release.**

Under 18 U.S.C. § 3632(d)(4)(A), "A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits" at a rate of "10 days time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities" with the possibility to earn an additional 5 days per 30 days of successful participation. 18 U.S.C. § 3632(d)(4)(A). Time credits earned are applied toward time in prerelease custody or supervised release. 18 U.S.C. § 3632(d)(4)(C). Prisoners are ineligible to **receive** time credits if they are serving a sentence for a conviction under one of several provisions of law set forth in 18 U.S.C. § 3632(d)(4)(D).

However, there is a distinction between earning time credits and the application of time credits. The application of time credits to prerelease custody or supervised release is governed by 18 U.S.C. § 3624(g). Section 3624(g)(1) sets forth the criteria for eligibility[2]:

> **(1) Eligible prisoners.**--This subsection applies in the case of a prisoner (as such term is defined in section 3635) who--
>
> **(A)** has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the

---

[2] The undersigned notes that an additional criteria for eligibility to apply credits is found in § 3632(d)(4)(E), which bars prisoners who are subject to a final order of removal under any provision of the immigration laws from applying time credits.

"System") in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;

**(B)** has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;

**(C)** has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and

**(D)(i)** in the case of a prisoner being placed in prerelease custody, the prisoner—

**(I)** has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or

**(II)** has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that—

**(aa)** the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

**(bb)** the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

**(cc)** the prisoner is unlikely to recidivate; or

**(ii)** in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

18 U.S.C.A. § 3624(g)(1). Thus, a prisoner may be eligible under 18 U.S.C. § 3632(d) to earn and receive time credits but not be eligible to have those credits applied under 18 U.S.C. § 3624(g).

Here, petitioner does not dispute that he does not have a recidivism score of "low" or "minimum."[3] Rather, petitioner's argument, construed broadly, is that the BOP has a

---

[3] Respondent asserts, and petitioner has not disputed, that petitioner has been assigned a "high" risk recidivism level. See [Doc. 13-1 at 1].

10

policy of denying petitioner his time credits due to his recidivism score despite petitioner not being ineligible under 18 U.S.C. § 3632(d)(4)(D).  In his response to the Motion to Dismiss or for Summary Judgment, petitioner argues that there is a contradiction between 18 U.S.C. §§ 3632 and 3624, pointing to the fact that he is eligible under § 3632(d)(4)(D). Indeed, there does not appear to be any reason listed in 18 U.S.C. § 3632(d)(4)(D) which would make petitioner ineligible to earn or receive credits and respondent does not assert that petitioner is not earning credits.

However, because his recidivism level is "high," 18 U.S.C. § 3624(g)(1) provides that he is ineligible to have those credits applied towards prerelease custody or release to supervised release.  While this labyrinthine interaction between eligibility to earn and receive credits and eligibility to apply those same credits is no doubt frustrating to prisoners trying to navigate the system, there is not a contradiction between these sections as petitioner suggests.  "[T]he FSA expressly provides that while an inmate who has a PATTERN score of medium or high risk of recidivism is eligible to complete EBRR programs and PAs, the successfully completed programs and PAs are not applied towards the inmate's time credits until she has received a minimum or low risk PATTERN score for two consecutive assessments for prerelease custody and a minimum or low risk PATTERN score for the last reassessment for supervised released."  *See e.g.*, **Brown v. Garrett**, No. 722CV00551AMMJHE, 2022 WL 18161601, at *3 (N.D. Ala. Dec. 22, 2022), *report and recommendation adopted*, No. 722CV00551AMMJHE, 2023 WL 130519 (N.D. Ala. Jan. 9, 2023).

**C.     To the extent petitioner challenges the BOP's determination of his eligibility to apply credits towards prerelease custody or supervised release, such determination is not reviewable.**

Finally, the undersigned notes that although the petition does not challenge the determination of his PATTERN Score, in petitioner's response to the Motion he argues that the PATTERN Score system is flawed: "How can a prisoner participate in [evidence-based recidivism reduction programs], maintain 7 years of clear conduct and work maintaining the facility. (A productive activity) and Petitioner Pattern System Score <u>Not Reduce</u>?"  [Doc. 17 at 6].

Insofar as petitioner is challenging the BOP's determination of his eligibility to apply time credits under 18 U.S.C. § 3624(g)(1), the undersigned agrees with respondent that such determination is not reviewable by this Court.  As respondent points out, 18 U.S.C. § 3625 states "Inapplicability of the Administrative Procedure Act – The provisions of sections 554 and 555 through 701 and 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter."  Respondent argues that "Congress's intentional placement of the eligibility determination aspect of the [First Step Act] in § 3624, where it is not reviewable under the [Administrative Procedure Act], speaks to the intent of Congress for the BOP to exercise discretion in making such determinations."   [Doc. 13 at 14].   The undersigned agrees; such individual determinations under § 3624 are not reviewable.  See **Welch v. Heckard**, No. 5:23-CV-00347, 2023 WL 6885005, at *4 (S.D. W.Va. Sept. 19, 2023) (Eifert, M.J.), *report and recommendation adopted* 2023 WL 6882684 (S.D. W.Va. Oct. 18, 2023) (Volk, J.) (collecting cases); **Morales v. Brewer**, No. 2:22-CV-2207 AC P, 2023 WL 3626315, at *2 (E.D. Cal. May 24, 2023), *report and recommendation adopted*, No. 222CV02207DADACHC, 2023 WL 4535042 (E.D. Cal. July 13, 2023) ("The discretionary

12

decision whether to release a prisoner into prerelease custody or supervised release under § 3624(g) is therefore not reviewable by this court.").

Because petitioner is not eligible to apply time credits earned under the First Step Act, the undersigned finds that his petition should be dismissed.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Motion to Dismiss, or in the Alternative, for Summary Judgment [**Doc. 12**] be **GRANTED** and the petition [**Doc. 1**] be **DENIED** and **DISMISSED WITH PREJUDICE**.

The petitioner shall have **fourteen (14) days** from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** 28 U.S.C. §636(b)(1); ***Thomas v. Arn***, 474 U.S. 140 (1985); ***Wright v. Collins***, 766 F.2d 841 (4th Cir. 1985); ***United States v. Schronce***, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is further directed to mail a copy of this Report and Recommendation to the petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

**DATED**:  October 27, 2023.

/s/ James P. Mazzone
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE